**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RAY CERVANTEZ; ADELINE ADRIAN; and ESTATE OF VALARIE CERVANTEZ,<br><br>    Plaintiffs,<br><br>vs.<br><br>GRAHAM COUNTY;<br>SHERIFF PRESTON J. ALLRED;<br>ROBERT PALMER;<br>ROBERT NAVARETTE; and<br>TIMOTHY GRAVER,<br><br>    Defendants. | No. CV-10-0419-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is Defendants Graham County, Sheriff Allred, Robert Palmer, Robert Navarette and Timothy Graver's Motion to Dismiss [Doc. 10]. On August 30, 2010, Plaintiffs filed their Response to Motion to Dismiss [Doc. 16]. Defendants have filed their reply. Subsequently, both parties supplemented their pleadings regarding recent Arizona authority. *See* Defendants Graham County, Sheriff Allred, Robert Palmer, Robert Navarette and Timothy Graver's Supplement to Defendants' Motion to Dismiss [Doc. 25]; Plaintiffs' Response to Proposed Supplement [Doc. 26].

## I.   FACTUAL BACKGROUND

Plaintiffs' claims arise from an incident on April 27, 2009. Decedent Valarie Cervantez was a passenger in a vehicle driven by an unnamed male. Another male, Onecimo Hernandez Arzola was the front seat passenger.

1  Safford Police Officer Medlin initiated a traffic stop of the vehicle for an expired 2 registration. During that stop it was determined that Decedent had an outstanding warrant 3 for her arrest. A search of Decedent's purse found methamphetamine paraphernalia and 4 Decedent admitted to having a methamphetamine pipe in her underwear.

5  Decedent was transported to the Safford Police Station and officers contacted the 6 Graham County Jail requesting a female detention officer to conduct a search of Decedent's 7 person. Graham County Jail did not have a female officer available, so Pima City Police 8 Chief Diane Cauthen agreed to conduct the search. Chief Cauthen arrived at the Safford 9 Police Station at approximately 9:00 p.m. and completed a search of Decedent finding the 10 methamphetamine pipe.

11  Officer Medlin escorted Decedent to the Graham County Jail at approximately 9:41 12 p.m., and Graham County Detention Officer Elisa Rope conducted a pat down of Decedent 13 finding no further contraband. Detention Officer Robert Navarette was summoned to process 14 Decedent into the facility. Officer Medlin indicated that Decedent may have used drugs.

15  Navarette processed Decedent in the booking area. He spoke with Decedent's mother 16 twice regarding bail. At approximately 10:00 p.m. Navarette moved Decedent into the 17 Attorney Visit Room because the jail did not have a normal cell for a female inmate. At 18 approximately 10:20 p.m. Jail Supervisor Sergeant Robert Palmer gave the order for jail 19 personnel to rotate assignments. Navarette moved to the Control Room, Officer Rope was 20 assigned as the jail's Traffic Officer.

21  At approximately 11:20 Sergeant Palmer noticed Decedent standing with her back 22 against the wall. He asked Navarette what was wrong with her. Navarette responded that 23 she could be on something, so Palmer instructed him to keep an eye on her. At 11:35 p.m., 24 Navarette recalled that he had promised Decedent a mattress and went to advise her that he 25 was going to get one. At this point, Decedent was on the ground sweating and could not 26 respond coherently to Navarette's questioning. Navarette informed Palmer of the situation. 27 At 11:45 p.m., Palmer checked on Decedent and found her on the floor shaking

28

uncontrollably. Palmer believed that she might calm down if given a little time and called Detention Officer William Smith to assist Decedent in going outside to cool off and get fresh air.

Decedent could not keep her balance and was incoherent when attempting to speak. Navarette and Smith placed her in the jail's restraint chair as a makeshift wheelchair and took her outside. Smith went to inform Palmer about his observations and asked him to call medical and find out from Medlin what Decedent might have taken. Smith asked Detention Officer Shawn Spitzer to help. Smith checked Decedent for track marks, per Palmer's direction, but found none. At midnight, Medlin returned Palmer's call and advised him that Decedent had smoke methamphetamine. Palmer attempted to contact his commander, Timothy Graver.

At 12:05 a.m. (April, 28, 2009), Palmer reached Jail Commander Tim Graver who instructed Palmer to get Decedent to a hospital. Officer Smith was instructed to call for the Jail's Transportation Officer Gilbert Montez to transport Decedent to the hospital. At 12:12 a.m., Smith made the call to Montez. Palmer instructed Officer Rope to assist with Decedent. At 12:20 a.m. Rope attempted to check Decedent's pulse, but could not find one. Rope radioed for help. At 12:21 a.m., Navarette called Graham County dispatch and asked them to send an ambulance. Smith also attempted to find a pulse and could not. Officers began CPR, paramedics arrived at 12:25 a.m. and took over emergency procedures. The ambulance departed the jail at 12:48 a.m. and transported Decedent to the Mount Graham Regional Medical Center where she was pronounced dead at 1:09 a.m.

On April 29, 2009, an autopsy conducted at the Forensic Sciences Center in Tucson ruled the cause of death as acute methamphetamine intoxication and certified it as an accident. On August 24, 2009, DPS released its report regarding its investigation. Plaintiff Ray Cervantez ordered a copy of the report in early September 2009, but did not hear back from DPS until December 4, 2009. Plaintiff Cervantez received a copy of the report on

1  December 26, 2009. Plaintiffs served notices of claim on Defendants Graham County and
2  Sheriff Preston J. Allred on April 8, 2010 and April 12, 2010 respectively.

3  On July 14, 2010, Plaintiffs filed their Complaint [Doc. 1] and additional attachments
4  thereto. Plaintiffs allege a Due Process claim pursuant to 42 U.S.C. § 1983 for a failure to
5  adopt or implement intake screening practices to determine the medical needs of incoming
6  inmates and for the establishment of a policy that discourages and/or forbids detention
7  officers from seeking emergency medical assistance when an inmate is in distress. Plaintiffs
8  further allege individual responsibility for deliberate indifference by Defendant Allred in the
9  promulgation of these policies and practices and by Defendants Graver and Navarette for
10 their actions in treating Decedent on the night of her death. Plaintiffs allege a cause of action
11 for Negligence and/or Gross Negligence against Defendants Graham County and Allred, as
12 well as violation of the Arizona Constitution Art. 2 §§ 2 & 15 (due process and cruel and
13 unusual punishment). Finally, Plaintiffs allege violation of Arizona's Wrongful Death statute
14 A.R.S. § 12-611 *et seq.* against Defendants Graham County and Allred.

15 On August 17, 2010, Defendants filed their Motion to Dismiss [Doc. 10]. Defendants
16 seek dismissal on the following grounds: (1) Plaintiffs failure to comply with Arizona's
17 Notice of Claim Statute; (2) Plaintiffs failure to timely file their Complaint for the state tort
18 claims against Defendants Graham County and Sheriff Allred; (3) Decedent's estate is not
19 a proper beneficiary to a wrongful death claim pursuant to A.R.S. § 12-612; and (4) Plaintiffs
20 lack standing to bring a wrongful death claim pursuant to 42 U.S.C. § 1983.

22 **II.    STANDARD OF REVIEW**

23 This matter is before the Court on Defendant's motion to dismiss the complaint for
24 failure to state a claim upon which relief can be granted. A complaint is to contain a "short and
25 plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(a), Fed. R. Civ.
26 P. While Rule 8 does not demand detailed factual allegations, "it demands more than an
27 unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, – U.S. –,

129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Dismissal is appropriate where a plaintiff has failed to "state a claim upon which relief can be granted." Rule 12(b)(6), Fed. R. Civ. P. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted).

## III.   ANALYSIS

   *A. Notice of Claim*

Defendants aver that Plaintiffs failed to timely file a notice of claim within the 180 days prescribed by statute. Defendants assert that the accrual date for Plaintiffs' claims was the date of Decedent's death while in custody of the Graham County Sheriff, April 28, 2009.

The Arizona Revised Statutes provide that:

> Persons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. The claim shall contain facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount. Any claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

A.R.S. § 12-821.01(A). Furthermore, "[f]or purposes of this section, a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event instrumentality or condition which

caused or contributed to the damage." A.R.S. § 12-821.01(B).[1]  Arizona courts have construed the section defining accrual as the codification of the common law discovery rule. *Thompson v. Pima County*, 226 Ariz. 42, 243 P.3d 1024, 1028 (Ct. App. 2010); *Little v. Arizona*, 225 Ariz. 466, 240 P.3d 861, 864 (Ct. App. 2010). "Under the discovery rule, . . . a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the cause [of action]." *Thompson*, 226 Ariz. 42, 243 P.3d at 1028 (alterations in original) (quoting *Doe v. Roe*, 191 Ariz. 313 ¶ 29, 955 P.2d 951, 960 (App. 1998) (citations omitted).

The Arizona Supreme Court has recognized that "it is not enough that a plaintiff comprehends a 'what'; there must also be reason to connect the 'what' to a particular 'who' in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault." *Walk v. Ring*, 202 Ariz. 310, 316, 44 P.3d 990, 996 (2002). To determine when a cause of action accrues requires an analysis of the elements of the claim. *Dube v. Likens*, 216 Ariz. 406, 411, 167 P.3d 93, 98 (Ct. App. 2007). "[W]hen discovery occurs and a cause of action accrues 'are usually and necessarily question of fact for the jury.'" *Walk*, 202 Ariz. at 316, 44 P.3d at 996.

At oral argument, defense counsel relied on *Thompson*, *supra*, for the proposition that Plaintiffs cannot sit back and simply wait for some evidence of negligence before filing their notice of claim. Plaintiffs assert that whether or not they were diligent in their investigation is not appropriate for resolution by a motion to dismiss. The Court agrees with Plaintiffs. As an initial matter, the *Thompson* court recognized "that whether a cause of action has accrued is 'usually and necessarily' a question of fact for the jury." 226 Ariz. 42, 243 P.3d 1024, 1028 (Ct. App. 2010). Moreover, the facts of *Thompson* are distinguishable from the

---

[1] Defendants reliance on the wrongful death statute for accrual of the wrongful death claim is misplaced. *See* A.R.S. § 12-611 (accrual of wrongful death action occurs when a wrongful act, neglect or default causes a death). Furthermore, it does not change the analysis under A.R.S. § 12-821.01(B).

- 6 -

1. instant case. There, plaintiff Taylor Thompson was involved in a single car accident. *Id.*,
2. 243 P.3d at 1026. Later that day, "a deputy sheriff issued a traffic citation to Taylor at the
3. hospital and told her and Kathy [Taylor's mom] that the condition of the road might have
4. contributed to the accident." *Id*. "The next day, John [Taylor's dad] and the family's
5. attorney went to the accident scene to investigate and take photographs." *Id*. The family
6. then waited until after the accident reconstructionist that they hired provided a report before
7. filing a notice of claim. *Id*. The Court found that "the information the Thompsons
8. possessed before February 1, 2007, constituted 'a minimum requisite of knowledge sufficient
9. to identify that a wrong occurred and caused injury,' and that it was attributable to a
10. particular entity or person." *Thompson*, 226 Ariz. 42, 243 P.3d at 1028 (internal citations
11. omitted). Contrary to *Thompson*, in this case the autopsy ruled Decedent's death an accident.
12. Plaintiffs did not know until DPS issued its investigative report that a wrong may have
13. occurred.
14. Furthermore, Plaintiffs allege a negligence claim, as well as a wrongful death claim
15. which also sounds in negligence. "To establish a claim for negligence, a plaintiff must
16. prove four elements: (1) a duty requiring the defendant to conform to a certain standard of
17. care; (2) a breach by the defendant of that standard; (3) a causal connection between the
18. defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214
19. Ariz. 141, 143, 150 P.3d 228, 230 (2007). In the instant case, there is a factual dispute
20. regarding whether there was a breach of Defendants' duty and whether any alleged breach
21. caused Plaintiffs' injuries. Moreover, there is a factual dispute regarding when this cause of
22. action accrued. Defendants point to language in the *Walk* opinion to suggest that "one may
23. say as a matter of law that the patient is not only aware of the injury but also on notice to
24. investigate whether the injury is likely attributable to the fault of someone responsible for her
25. care." Defs.' Reply to Mot. to Dismiss [Doc. 20] at 3 (quoting *Walk*, 202 Ariz. at 314, 44
26. P.3d at 994). This section of the *Walk* opinion was discussing *inter alia* the court's previous
27. opinion in *Kowske v. Life Care Ctrs. of Am., Inc.*, 176 Ariz. 535, 863 P.2d 254 (Ct. App.
28.

1993). The *Walk* court, however, went on to state, "we disapprove *Kowske* to the extent that it suggests accrual occurs in cases of this type before a plaintiff is put on reasonable notice to investigate whether the injury is attributable to negligence." *Walk*, 202 Ariz. at 316, 44 P.3d at 997. Again, at what point Plaintiffs were on reasonable notice to investigate is a question of fact for the jury. As such, Defendants' Motion to Dismiss [Doc. 10] regarding the Notice of Claim will be denied.[2]

### B. *Statute of Limitations*

Defendants aver that Plaintiffs failed to timely file their Complaint within the one year statute of limitations prescribed by statute. Defendants assert that the accrual date for Plaintiffs' claims was the date of Decedent's death while in custody of the Graham County Sheriff, April 28, 2009.

The Arizona Revised Statutes provide that "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." A.R.S. § 12-821. "To trigger the statute of limitations something more is required than the mere knowledge that one has suffered an adverse result while under the care of a professional fiduciary." *Walk v. Ring*, 202 Ariz. 310, 317, 44 P.3d 990, 997 (2002). Arizona courts have concluded that "the legislature intended the same discovery rule to apply to both the filing of the notice of claim and the filing of the complaint against public entities or employees." *Dube v. Likens*, 216 Ariz. 406, 422, 167 P.3d 93, 110 (Ct. App. 2007) (citing *Stulce v. Salt River Project Agricultural Improvement & Power District*, 197 Ariz. 87, 3 P.3d 1007 (Ct. App. 1999)).

---

[2] Defendants appear to raise Fraudulent Concealment for the first time in their reply brief. The general rule is that issues raised for the first time in reply are deemed waived. *Northwest Acceptance Corp. v. Lynnwood Equipment*, 841 F.2d 918, (9th cir. 1988). To the extent the Court deems fit to consider this issue, Defendants' arguments must fail for the same reasons discussed herein, whether or not there is fraudulent concealment (which directly impacts when accrual occurred) is an issue of fact for the jury.

- 8 -

1    In light of the questions of fact regarding the accrual of Plaintiffs' claims, dismissal would be inappropriate. Accordingly, Defendants' Motion to Dismiss [Doc. 10] regarding the Statute of Limitations will be denied.

*C. Decedent's Estate as Beneficiary to a Wrongful Death Claim*

Defendants argue that Decedent's estate is not a proper beneficiary of a wrongful death claim. *See* A.R.S. § 12-612(A). Plaintiffs do not bring a claim for wrongful death on behalf of the estate, but rather as the surviving parents of Decedent. As such, Defendants' argument is without merit. Accordingly, Defendants' Motion to Dismiss [Doc. 10] regarding the Decedent's estate as a beneficiary to a wrongful death claim will be denied.

*D. Standing for § 1983 Claim*

Defendants assert that Plaintiffs do not have standing to sue pursuant to 42 U.S.C. § 1983.

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Selden*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205 (1975). Questions of standing incorporate both constitutional and prudential aspects. *See id.* "The actual or threatened injury required by Art. III [of the United States Constitution] may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Id.* at 501, 95 S.Ct. at 2206 (citing *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n.3, 93 S.Ct. 1146, 1148 n.3 (1973), *Sierra Club v. Morton*, 405 U.S. 727, 732, 92 S.Ct. 1361, 1364 (1972)). Standing properly exists only if "the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206.

Section 1983, 42 U.S.C. states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

- 9 -

> injured in an action at law, suit in equity or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. "The Ninth Circuit recognizes that a parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child." *Curnow v. Ridgecrest Police et al.*, 952 F.2d 321, 325 (9th Cir. 1991) (citations omitted); *See also Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) (discussing the appropriate standard to apply regarding a defendant's behavior when analyzing an alleged violation of a parent's due process right to associate with his or her child).

Defendants rely on a recent Arizona Court of Appeals case to assert that Plaintiffs lack standing to assert a claim pursuant to 42 U.S.C. § 1983. This assertion is incorrect. In *Braillard v. Maricopa Co. et al.*, 224 Ariz. 481, 232 P.3d 1263 (Ct. App. 2010), the Arizona Court of Appeals suggests that because a Seventh Circuit opinion was overruled (by the Seventh Circuit), that this somehow implicates the Ninth Circuit Court of Appeals case which cited the Seventh Circuit case in an opinion recognizing a *child's right* to assert a substantive due process claim for loss of familial association. *See Braillard*, 224 Ariz. at 488, 232 P.3d at 1270. The *Braillard* court states that "[t]he Ninth Circuit has not revisited this issue following the Seventh Circuit's overruling of *Bell*. And, although we 'may choose to follow substantive decisions of the Ninth Circuit Court of Appeals,' we are not persuaded that doing so here would 'further predictability and stability of the law.'" *Braillard*, 224 Ariz. at 489, 232 P.3d at 1271 (citations omitted). Although the *Braillard* court is correct that the Ninth Circuit Court of Appeals has not discussed the Seventh Circuit's overruling of *Bell*, it has reaffirmed that the rule in this circuit is that parents have a constitutionally protected liberty interest under the Fourteenth Amendment which will support a cause of action pursuant to 42 U.S.C. § 1983. *See Curnow v. Ridgecrest Police et al.*, 952 F.2d 321, 325 (9th Cir. 1991); *Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008). This Court is bound by the

- 10 -

determinations of the Ninth Circuit. As such, Plaintiffs have properly plead their causes of action.

Accordingly, IT IS HEREBY ORDERED that Defendants Graham County, Sheriff Allred, Robert Palmer, Robert Navarette and Timothy Graver's Motion to Dismiss [Doc. 10] is DENIED.

DATED this 10th day of March, 2011.

_____
Cindy K. Jorgenson
United States District Judge

- 11 -